JOSEPH B. EATON *vs.* HENRY MELLUS & another.

The assignment, for a valuable consideration, of a chose in action, implies a covenant that the assignor has done and will do nothing to prevent the assignee from collecting it.

An assignee, for a valuable consideration, of a claim upon the government, is not, upon the subsequent collection by a third person of the full amount of the claim to his own use under an authority given by the assignor previously to this assignment, and the consequent refusal of the government to pay the claim to this assignee, entitled, in

the absence of fraud in the assignor, to recover of the assignor the whole of the amount so collected; but is entitled to recover the amount of the consideration which he paid for the assignment, with interest from the time of presenting his claim to the government; and such interest is to be computed according to the legal rate here, although the transaction took place in a foreign country.

In an action by the assignee against the assignor of a claim upon the United States, assigned to the plaintiff in payment for goods sold in California, just before its annexation to the United States, and which the plaintiff has been prevented by the defendant's acts from collecting, evidence of the first cost of the goods in the United States, the expenses of transporting them to California, the duties there, and the usual and proper addition for profits, and also evidence of sales of like articles for cash within three or four months before and after the sale, and that the plaintiff within two months afterwards repurchased some of these goods for cash at advanced rates, is admissible in connection with other evidence of the market value of the goods at that time and place.

ACTION OF CONTRACT. The declaration alleged that the defendants assigned to the plaintiff, in payment for goods sold to them in California in 1847, a claim upon the United States for $1,000 ; but had previously acknowledged in writing that they had received payment of said sum from the officer who signed the certificate ; and had thus by their own act discharged their alleged claim, and the United States had refused to pay it to the plaintiff, but paid it to John C. Fremont, to whom said officer certified it to be due ; and thereby the defendants became liable to pay the plaintiff said sum of $1,000. Trial before *Thomas*, J., who ordered a verdict for the defendants, and reported the case to the full court, in whose opinion the facts are stated.

*S. E. Sewall*, for the plaintiff.

*R. H. Dana, Jr.* for the defendants.

BIGELOW, J. Upon a careful examination and consideration of the evidence in this case, the facts satisfactorily proved by the plaintiff may be briefly stated as follows :

The firm of Mellus & Howard, doing business in California, on the 1st of December 1846, at Pueblo de los Angeles, sold to the United States five hundred pounds of rifle powder at two dollars a pound. The purchase was made in the name and behalf of the United States by John K. Wilson, a lieutenant in the navy of the United States, but then acting as ordnance officer of the " California Battalion of United States forces " under the command of Lieutenant Colonel John C. Fremont, an officer of the army of the United States. On the 18th of April follow-

ing, Mellus & Howard made out their bill against the United States, in the form usually adopted in rendering charges against the government, as follows: " United States Ordnance Department to Mellus & Howard Dr. Monterey, December 1st 1846. To five hundred lbs. of rifle powder, at $2 per lb. $1,000." At the same time, Mellus wrote upon it the following receipt: " Angeles, April 18th 1847. Received of Capt. John K. Wilson, Ord. Officer California Battalion U. S. Forces, the sum of one thousand dollars, in full payment of above account. Henry Mellus." In exchange for this bill and receipt, which were then delivered to Wilson, he gave the defendants a certificate or due bill in the form following: " Cuidad de los Angeles, April 18th, 1847. This is to certify that there is now due Messrs. Mellus & Howard the sum of one thousand dollars, for ammunition furnished for the use of California Battalion U. S. forces. $1,000. John K. Wilson, Ord. Officer Cal. Battalion U. S. Forces. J. C. Fremont, Lt. Col. U. S. A., Commanding Cal. Battalion." At or about the same time, and probably as part of the same transaction, Wilson gave to Colonel Fremont the bill and receipt of said defendants, adding thereto the following receipt and certificate: " Received from Lt. Col. J. C. Fremont, Angeles, April 1847, the above sum of one thousand dollars, credit for the above payment being therefore due to him. John K. Wilson, Ord. Officer Cal. Batt."

A year subsequent to these transactions, on the 10th of April 1848, the defendants assigned and transferred to the plaintiff the above certificate or due bill which was given to them as above stated, signed by Wilson and countersigned by Colonel Fremont, and thereby expressly authorized and empowered him to receive thereon the amount of one thousand dollars, as due to them from the United States. This was done for the purpose of paying the plaintiff for certain merchandise which had been sold to the defendants by his agent, and for which they were to pay the plaintiff in government paper. In the mean time however, early in the year 1848, Colonel Fremont had presented his claims against the government, for his expenses and disbursements while engaged in service in the conquest of California, to the

Eaton *v.* Mellus & another.

treasury department at Washington, for adjustment and payment. They amounted to a very large sum. Among the items included in his accounts, as constituting a valid charge in his favor, was a claim for one thousand dollars charged by him as paid to Mellus & Howard in April 1847, for five hundred pounds of rifle powder, being the same charge included in the receipt and certificate above stated, which were delivered to him by Wilson. In support of this charge, said bill and receipt were produced by Colonel Fremont to the United States as a voucher. The accounts of Colonel Fremont, which seem to have comprehended a great variety of charges, properly falling under the cognizance of several different bureaus or divisions of the treasury department, passed through the second, third and fourth auditor's offices, and on the 5th of September 1848 were adjusted and closed; and a final balance of $12,825.72, was found and duly certified to be due to Colonel Fremont from the United States, which was made up by including, as a credit properly due to him, the charge of one thousand dollars as having been paid by him to the defendants for the powder supplied by them to Lieutenant Wilson. This balance was subsequently paid in cash to Colonel Fremont; $11,108.20 being paid on or before the 15th of February 1849, and the residue on the 4th of April 1850.

Sometime in June 1849, and prior to the 16th of that month, the plaintiff, for the first time, presented the certificate which he had received from the defendants, and which had been assigned to him, to the treasury of the United States for payment. This was some months after the accounts of Colonel Fremont had been finally closed, and the balance due him had been allowed and certified, as above stated. The United States refused to allow the certificate or pay the amount to the plaintiff, until, in compliance with the rules of the treasury department, the items of ammunition for which the certificate was given could be ascertained and specified. These were not procured by the plaintiff, although he applied to the defendants therefor, until after the entire balance due to Colonel Fremont had been paid to him, in April 1850. Upon obtaining the items,

48 *

it appeared that the ammunition for which said certificate was given was the same powder which had been included in Colonel Fremont's accounts, and for which he had been paid. The United States therefore refused to pay the plaintiff the amount which he claimed as assignee of the certificate received by him from the defendants.

Upon these facts, the question arises whether the plaintiff has a valid claim on the defendants, which he can enforce in this suit. In determining this question, we have no occasion to decide whether any money was actually paid by Wilson to Mellus, in consideration for the receipt of the account of Mellus & Howard, delivered by him to Wilson, nor whether the amount of one thousand dollars, certified by Wilson as having been received by him from Colonel Fremont on said account, was ever in fact paid. Looking at the situation and circumstances in which it appears that the officers of this " California Battalion " were placed at the time of this transaction—acting rather on their own authority and responsibility than under orders from the government—and also taking into consideration the testimony of Lieutenant Wilson respecting the transaction, the more reasonable inference is, that there were no funds in the hands of these officers, sufficient to pay to the defendants so large a claim ; and that the papers were put into the form in which they now appear, as a mode of adjusting the account with the defendants, and putting them in a shape by which payment of the claim of Mellus & Howard could be most readily obtained of the government, through the agency of Colonel Fremont.

But however this may be, one fact, material to the decision of this cause, is manifest. The receipt of Mellus to the bill of his firm, with the certificate of Lieutenant Wilson thereon, was evidence that the amount of it was actually paid by Wilson to Mellus on the day of its date, and that this amount was repaid to Wilson by Colonel Fremont, who was entitled to receive the amount of it from the United States. In other words, we think it clear that the receipt of the account of the firm against the United States by Mellus, as having been paid by Wilson, and the certificate of Wilson that the amount had been paid

to him by Colonel Fremont, and that he was entitled to credit therefor from the United States, were *prima facie* evidence of such payments, and of ample authority from the defendants to Colonel Fremont to present the claim to the United States, receive the amount thereof, and execute a sufficient discharge therefor. It was equivalent to an assignment of the claim by the defendants to Colonel Fremont, coupled with an authority to collect it from the United States. The defendants had, therefore, apparently assigned the same claim, with power to collect it of the United States, to two different persons; first to Lieutenant Wilson, and through him to Colonel Fremont, in the manner before stated; and secondly to the plaintiff, in payment for the merchandise sold to them by his agency.

Under these circumstances, it cannot be doubted that the amount of the bill was rightly allowed and paid to Colonel Fremont by the United States. His accounts, including this item, had not only been duly allowed, and a balance in cash found due to him; but no notice of the assignment of this claim to the plaintiff was given to the government, so that they could identify it as being the same which they had previously allowed to Colonel Fremont, until after the payment of the entire balance due him had been made. The payment to Colonel Fremont was therefore made to a person apparently duly authorized by the defendants to receive it, and before the government had any notice of a revocation of such authority, or of the assignment of the same claim to the plaintiff.

It results, from this view of the facts, that the defendants by their own act prevented the plaintiff from receiving of the United States the amount of the claim which they had assigned to him in payment for the merchandise sold by his agent to them. We do not think it necessary to say that any fraud was intended by the defendants. It is quite probable, from the loose and inaccurate mode of dealing, which seems to have prevailed in California at the time when these transactions took place, that these defendants, when they assigned the certificate of Lieutenant Wilson to the plaintiff, may have believed that their claim against the United States still remained good and undis-

charged. But however this may have been, it is clear that the amount was rightly allowed to Colonel Fremont by the United States, upon the evidence of the receipt which the defendants, through Mellus, had given to Wilson, and that the payment to Colonel Fremont was a sufficient ground for a refusal by the United States to pay to the plaintiff the amount of the certificate assigned to him by the defendants. And it is also clear, that if it had not been for the act of the defendants in giving this receipt to Wilson for the amount of their bill, the claim would not have been paid to Colonel Fremont. It would still have remained a valid claim against the United States, such as the plaintiff agreed to take, and the defendants to sell, in exchange for his merchandise. It was therefore the act of the defendants, which enabled Colonel Fremont to collect the amount of the bill from the United States, and thereby to defeat the plaintiff, their own assignee, in obtaining payment of it from the government.

Such being the facts, we think the plaintiff is entitled to recover in this action; not, however, on the ground that there was any warranty by the defendants, that the plaintiff should receive payment of the claim from the United States—for there is no proof of any such warranty—but upon the principle that there was an agreement, necessarily implied from the dealing between the parties, that the defendants sold to the plaintiff all the right and title which belonged to them as creditors of the United States for the amount of this claim, and that they had not previously assigned it to another person, and thus by their own act defeated the title to the claim which, for a valuable consideration, they sold to the plaintiff. The sale of a chattel or a chose in action, without warranty of title, conveys to the purchaser all the rights of the vendor. It would be a manifest violation of the essence of this contract, if the vendor should, by any act of his own, defeat the title which he had transferred to another. If A. sells to B. a debt against C., without warranty, he does not thereby stipulate that the debt is absolutely due, or that it will be paid by C.; but he does agree, by necessary implication, that his title to the claim, such as it is, is thereby

vested in the purchaser, and that no act of his own shall deprive his assignee of the right and authority to collect it of the debtor.    *Pomfret* v. *Ricroft,* 1 Saund. 322.    *Dexter* v. *Manley* 4 Cush. 24.

Suppose a creditor sells a claim, which he had previously authorized another person to collect in his behalf, what is the effect of such a contract?    Clearly, it is a revocation of such previous authority, and an agreement, by implication, that if the claim has been previously collected of the debtor, the proceeds shall belong to the purchaser.    In such case, the vendor would be liable to the assignee in damages for a breach of such implied contract.

In the case at bar, the plaintiff assumed all the risks which attached to the claim purchased by him of the defendants, arising from its origin and nature; such as the want of authority in the officers to contract the debt, the unreasonableness of the charge, and the difficulty of procuring its allowance from the government.    He was not assured against such risks, by any agreement, either express or implied, between himself and the defendants.    But he was not to incur any risk, that the defendants had already parted with their title to the claim, or done any act by which its collection by him would be defeated.    It was their title as original creditors of the United States for this claim, which the plaintiff purchased.    It was a breach of their contract with him, if they had previously sold this same title, or authorized the collection of the debt in their name by another person.    It is not a case, therefore, of a failure of title in the defendants, by a paramount claim or better title in a third person, the true owner.    In the absence of fraud, such failure would be covered only by an express warranty.    Chit. Con. (8th Amer. ed.) 447.    But it is a case where the defendants, by their own act, have defeated the very title which they agreed to sell to the plaintiff.

In regard to the extent of the defendants' liability, it seems to us that the breach of the contract is analogous to that of a covenant of good right to sell and convey land, where the measure of damage is the price paid.    There being no fraud on the part

of the defendants, the amount paid by the plaintiff, with interest, is the true measure of the defendants' liability. The evidence tends to show that the value of the claim at the time of its pur-chase by the plaintiff was less than par. He ought not there-fore to recover the full amount of the certificate, but only the consideration paid by him therefor. It having been a sale, the vendee taking all risks, except the wrongful act of the assignors in defeating the collection of the claim, this seems to be an equitable rule of damages, which does exact justice between the parties. *New trial ordered*

A new trial was had, for the purpose of assessing the dam-ages, before *Merrick*, J., who made the following report thereof for the consideration of the full court :

" It appeared that Phelps, the plaintiff's agent, sold a bill of goods of some eighty or ninety articles, to the defendant, in exchange for orders or certificates on the United States govern-ment, to be selected by Phelps. This sale took place, as Phelps testified, on the 1st of December 1846, and as the defendant testified, between April and October 1847. On the 7th of Octo-ber 1847, Phelps selected, from government paper in the defend-ant's hands, the certificate of Fremont, declared upon, for $1,000, and a certificate of one Gillespie, for $398.53 ; and an account was presented to him by the defendants, showing a balance of $63.99 due them, which was carried to a new account. On the 10th of April 1848, the defendants assigned the certificate declared on to the plaintiff. There was no evidence that any request was made to the defendants to make the assignment before that time. The only evidence as to the time of the pre-sentment of this certificate to the United States government, and its refusal, was stated in the former report. [*ante*, 569, 570.]

" By the decision of the full bench of this court, this action was sustained, and the plaintiff was held entitled to recover, not the face of the certificate, but the value of the goods sold in exchange therefor. The plaintiff contended, and offered evidence tending to show, that the goods were put at their cash prices, taking the certificates at par. The defendants contended, and

offered evidence tending to show, that the certificates were at a large discount, and the goods much depreciated below the usual value of similar goods, and were put at nominal prices, to meet the depreciation of the certificates.

" The plaintiff, in support of his position, offered the following evidence, which was objected to by the defendants, but admitted, to wit, evidence of the first cost of the goods, that the average rate of duties paid in California on assorted cargoes was 100 per cent.; that the advance charged to meet the duties and the expenses of the voyage should be 300 per cent. on the invoice, and that the usual and proper advance on the invoice, to allow a fair paying profit, should be 300 per cent.; and that the prices charged in the bill would leave a fair profit of from 60 to 100 per cent. on the invoice.

" He was also permitted to give evidence of certain instances of sales made by him, within three and four months before and after this sale, of certain articles of cargo of a similar description with these articles, for cash, at equal or larger prices; and also that, within two months after this sale, he bought back from the defendants, for cash, three or four of the articles sold, at advanced rates.

" I ruled, that if the jury was satisfied that the goods were sold at cash prices, and the certificates were taken at par, the amount due was $1,000; but if they thought the goods were sold at less than cash prices, then the debt would be in that proportion to $1,000, which the actual value of the goods bore to their nominal value.

" On the subject of interest, the only evidence on the part of the plaintiff was that of said Phelps, who testified that there was no legal rate of interest in California; that interest was arbitrary, and depended on the agreement of parties to each transaction. The plaintiff offered evidence of transactions in California, in which interest was paid, by agreement, at certain rates ranging from one to three per cent. a month, for the purpose of establishing an average of the interest usually paid. But he did not offer to prove, and admitted that by any evidence now in his power to produce he was unable to prove, that there

Eaton *v.* Mellus & another.

was any rule or provision of law, of any kind whatever, in force in San Francisco, or in California, allowing interest, or fixing any rate of interest in contracts, or as damages for the nonperformance of contracts. For the purposes of the present trial, I ruled, that as it was not shown that interest was in any way regulated by law at San Francisco or in California, the plaintiff was not entitled to recover, in this action, interest or damages for the nonperformance, by the defendants, of their contract, at the rate or rates which from time to time were paid by parties in pursuance of special agreements relating thereto ; and therefore I rejected the proposed evidence. I further ruled, that the plaintiff, under such circumstances, was entitled to recover interest at the rate prescribed by law in this commonwealth, from the day when payment for the goods was demanded of the defendants. The defendants insisted that the plaintiff was not entitled to recover any interest, or if he was, not until after presentment of said government paper to the proper officer or department for payment, and a refusal of payment thereof, or certainly not until the said written assignment of said paper, or from the date of the writ.

" In pursuance of this ruling by the court, the defendants offered no evidence on the subject of interest, and there was added to the value of the goods as found by the jury, to wit, the sum of $1,000, interest at the rate of six per cent. per annum, from the said 7th day of October 1847 to this time, and the verdict was rendered accordingly."

The arguments and decision upon this report were made at November term 1857.

*Dana*, for the defendants. 1. The goods in question were part of a cargo intended for the California market, and then actually for sale in that market, and marketable in their character. The measure of damages is the market value of the goods, the proper evidence of which is the testimony of persons acquainted with the goods and the market; or, in special cases of foreign markets, of experts in the home ports, who know the state of such markets. as merchants. The evidence admitted, of the first cost in Boston, expenses of transportation, and duties

with an addition for profits, formed a basis of calculation altogether independent of the market value of the goods, and should have been excluded. *Basin* v. *Richardson*, 20 Law Reporter, 129. *Smith* v. *Griffith*, 3 Hill, 333. *Dana* v. *Fiedler*, 2 Kernan, 40. *Stevens* v. *Lyford*, 7 N. H. 360. *Furlong* v. *Polleys*, 30 Maine, 491. Sedgwick on Damages, (2d ed.) 278.

2. The evidence admitted, of a few instances of sale, was objectionable, as introducing proof of special transactions which opened new issues, and as substituting those for the general market value, which was open to proof.

3. This action, as construed by the court, is not based on a money demand for a sum certain, or ascertainable by computation, payable at a time certain, either by express or implied agreement; it is a special action on the case, sounding altogether in damages unliquidated. In such case, interest should not be given as matter of law, but left to the jury as a question of damages, either to their discretion, or as dependent upon circumstances, such as, for instance, misconduct of the defendants in obtaining or retaining the money or goods, special benefit derived by them, or loss accruing to the plaintiff; and other considerations of equity or misconduct. 1 Amer. Lead. Cas. (4th ed.) 504, 506, 509, and cases cited, in note to *Selleck* v. *French*. 2 Parsons on Con. 382, *note.* Sedgwick on Damages, 377, 385, 386. *Ancrum* v. *Slone*, 2 Speers, 594. *Moulton* v. *Scruton*, 39 Maine, 287.

Even if this is considered as a suit for a money demand for goods sold, or for a rescission of a contract for the sale of goods or the purchase of a certificate, or for money paid on a consideration which has failed, or the like, still interest depends on similar circumstances, and on notice of rescission, demand and refusal, &c. *Boston & Sandwich Glass Co.* v. *Boston*, 4 Met. 181. *Hubbard* v. *Charlestown Branch Railroad*, 11 Met. 124. *Goff* v. *Rehoboth*, 2 Cush. 475. *Hunt* v. *Nevers*, 15 Pick. 500. *Dodge* v. *Perkins*, 9 Pick. 388. *Walker* v. *Bradley*, 3 Pick. 261. *Moulton* v. *Scruton*, 39 Maine, 287. *Jacobs* v. *Adams*, 1 Dall. 52. *Letcher* v. *Woodson*, 1 Brock. 212. *Wood* v. *Gray*, 5 B. Monr. 92. *Gosbell* v. *Archer*, 2 Ad. & El. 500. *Foster* v. *Weston*,

6 Bing. 709. 1 Amer. Lead. Cas. 504, 505, 509, 512, 516, Sedgwick on Damages, 377–382. 2 Parsons on Con. 381.

The question of interest in this case depends on the law of California. *Winthrop* v. *Carleton*, 12 Mass. 4. 1 Amer. Lead. Cas. 519. The report shows that there was no evidence that interest was then allowed there by law or by usage. California was then a Roman Catholic country; and by the common law of Roman Catholic countries, interest, as such, is not given. *Lowe* v. *Waller*, 2 Doug. 740. Sedgwick on Damages, 374.

If any interest was due, it was only from the time of demand, or date of the writ. 3 Pick., 15 Pick., and 4 Met., above cited. 1 Amer. Lead. Cas. 504, 505.

*Sewall*, for the plaintiff. 1. The cost of the goods, the duties paid on them in California, the customary advance on goods there, and the actual profit on the sale, were all admissible in corroboration of the direct evidence that the goods were put at their cash value.

2. The evidence of actual sales and purchases within a few months before and after the sale in controversy, of similar articles, for cash, for the same and higher prices, was also admissible on the same issue. *Gainsford* v. *Carroll*, 4 D. & R. 161. *Wyman* v. *Lexington & West Cambridge Railroad*, 13 Met. 316. *Barnard* v. *Conger*, 6 McLean, 497. *Barbour* v. *Nichols*, 3 R. I. 187. *Kugler* v. *Wiseman*, 20 Ohio, 361.

3. The plaintiff was entitled to interest from the time of receiving the certificate; for at that time the contract was broken, by giving a worthless certificate instead of good government paper contracted for. *Etheridge* v. *Binney*, 9 Pick. 272. *Dodge* v. *Perkins*, 9 Pick. 368. *Fowler* v. *Gilman*, 13 Met. 267. *Kennedy* v. *Whitwell*, 4 Pick. 466. *Van Rensselaer* v. *Jewett*, 2 Comst. 135.

This interest should be California interest; and as it does not appear that there was any particular rate of interest there established by law, it must be the average customary rate there at the time of the breach of the contract. *Gibbs* v. *Fremont*, 9 Exch. 25. *Ekins* v. *East India Co.* 1 P. W. 395. *Consequa* v. *Willings*, Pet. C. C. 225. *Winthrop* v. *Carleton*, 12 Mass. 4.

*Von Hemert* v. *Porter*, 11 Met. 210. Story Confl. § 307. 2 Story on Contracts, § 1028 *b.*

At least, the plaintiff is entitled to interest at the Massachusetts rate, as it does not appear that the rate in California was less. *Wood* v. *Corl*, 4 Met. 203. *Hall* v. *Woodson*, 13 Missouri, 462.

Where interest is given as damages, it is to be computed according to the *lex fori;* and the practice in Massachusetts is, for the court to compute it, and not to submit it to the jury.

DEWEY, J. This case has heretofore been before the court, and the general question of the liability of the defendants decided. The further inquiry was as to the amount of damages. This, under the former decision, was held to be the actual consideration paid by the plaintiff for the certificate of Fremont and Wilson. That led directly to the inquiry of the value of the goods parted with. That this value was to be determined by the market value at the place of sale in California, was not controverted, and no instructions on that subject are complained of. The questions arose upon the admission of certain evidence offered by the plaintiff as bearing upon and affecting that question.

The plaintiff had offered evidence tending to show that the goods were sold to the defendants at their cash value, and for cash prices, in California; and the defendants introduced evidence tending to show the contrary. The court further allowed the plaintiff to introduce evidence of the first cost of the goods, the expenses of transportation of such goods, the duties to be paid thereon, and the proper and reasonable sum required to be added to the invoice price, as profits — all which was, as we understand the report, to aid the plaintiff in fixing the value of the goods at the place of sale to the defendants.

The court also allowed the plaintiff to show in evidence certain sales of similar articles, made by him shortly before, and like sales shortly after the sale to the defendants, and also that some of the articles bought by the defendants were afterwards resold to the plaintiff at an advanced price.

We are to remember that these sales were made in California

in 1847, when the state of things was very different from that of the present time, and when the market value of merchandise could not be settled as easily and satisfactorily as it could be in New York or Boston. Under the circumstances of this case, we think the verdict should not be set aside on account of the admission of this evidence. It might have some tendency to aid in settling the market value of such property at that distant and uncertain market.

In one of the cases cited, *Snell* v. *Griffith*, 3 Hill, 338, where a witness had testified to the market value of certain merchandise at the place of the sale, the court held, that it was competent for the defendants, on cross-examination, to inquire of such witness, " What price was paid for the same by the plaintiff? "—the court saying that it was some evidence of the value, and might be taken into the account with the other testimony.

Such evidence as was admitted in the present case could only be used in aid of the other evidence in the case, or resorted to from peculiar circumstances, as in a case where no market value could be shown directly. It might be of very little weight, but we do not think the verdict should be set aside for its admission.

The further question reserved is as to the allowance of interest. No interest is demandable here by way of contract, but must be given in the nature of damages. In looking at the transaction between the parties, it is apparent that the plaintiff had no ground for expecting any payment of interest by the government, and that the defendants would have been discharged of their liability if the certificate had been allowed to the plaintiff, and paid on its presentment to the proper department at Washington. We think that interest, by way of damages, should be allowed at the rate of six per cent. per annum from the time of such presentment of the certificate, and demand of payment thereof by the plaintiff.

*Verdict to be amended accordingly, and judgment thereon.*